# In the United States Court of Federal Claims

No. 23-1866

(Filed: January 17, 2025)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MICHAEL J. GLOMSKI,

                Plaintiff,

      v.

THE UNITED STATES,

                Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*William E. Cassara,* William E. Cassara, P.C., Evans, GA, counsel for Plaintiff.

*Tanya B. Koenig,* U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Carlos A. Pagán*, Office of Judge Advocate General, Department of the Navy, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

Michael J. Glomski brings this wrongful discharge action seeking reinstatement, correction of records, back pay, and other relief under the Military Pay Act ("MPA"), 37 U.S.C. § 204. Before the Court are cross-motions for judgment on the administrative record ("MJAR") filed by Mr. Glomski and the government pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons below, the Court **GRANTS** the government's MJAR and **DENIES** Mr. Glomski's MJAR.

**I.  BACKGROUND**

Mr. Glomski joined the Navy on July 9, 2001. AR 45.[1] He achieved the rank of Machinery Repairman First Class. AR 44; Compl. [ECF 1] ¶ 3. He was discharged on October 24, 2017. AR 45. In the early morning of May 27, 2017, Mr. Glomski's wife, Heather Glomski, called the police to their home. AR 73, 76. Mrs. Glomski told the police that they had been "drinking alcohol most of the night," AR 76, and that Mr. Glomski "was highly intoxicated," AR 72. She further explained that "she admitted to [Mr. Glomski] that night that she cheated on him years ago." AR 76. According to Mrs. Glomski, her husband then "became upset and left the house." *Id.* She indicated that when he returned, he "went into a room to play on the computer." *Id.* After Mrs. Glomski approached him to "talk about the incident," Mr. Glomski allegedly

---

[1] The Court cites to the administrative record filed by the government at [ECF 7] as "AR __."

"grabbed his .45 handgun out of the nightstand and pointed it at the left side of her head." *Id.* Mrs. Glomski stated that "he forced her on the bed and stated several times he would kill her." *Id.* Upon questioning by the police, Mr. Glomski admitted that "he grabbed [his] gun [and] chambered a round but [that he] did not point it at [his wife]." *Id.* Mr. Glomski stated that he "wanted to scare her" and that he "pushed her out of the room." AR 72. On this information, the police arrested Mr. Glomski for "felonious assault." AR 76-77. State prosecutors charged Mr. Glomski with felony assault with a dangerous weapon and domestic violence. AR 105. However, on June 14, 2017, prosecutors dropped the charges due to there being "no witnesses." AR 106.

On June 20, 2017, a naval officer tasked with conducting a preliminary investigation into the domestic disturbance, *see* AR 87-88, recommended that the "incident be investigated further within the military Non-Judicial punishment system," AR at 89. The Navy's Family Advocacy Program ("FAP") Incident Determination Committee met on July 26, 2017, and concluded that the case met the criteria for "spousal physical abuse." AR 108. The FAP further concluded that the incident "qualifie[d] as a reportable incident to the parent command as an incident which require[d] command notification of the Domestic Violence Incident Count." AR 111.

On September 6, 2017, Mr. Glomski appeared before an Administrative Separation Board ("ADSEP"). *See* AR 60, 120-21. He was charged with violating Article 128 of the Uniform Code of Military Justice ("UCMJ")—assault consummated by battery. AR 50.[2] After a hearing, the ADSEP concluded, by a vote of 2 to 1, that a preponderance of the evidence supported the charge. *See id.* The ADSEP recommended, by a vote of 2 to 1, that Mr. Glomski be separated, and it further recommended, by a vote of 3 to 0, that his service be characterized as honorable. *See id.*

On September 14, 2017, counsel for Mr. Glomski submitted a letter of deficiency to the Navy Personnel Commander regarding the ADSEP hearing. AR 60-65. He requested a new ADSEP hearing, alleging that the ADSEP committed two "prejudicial procedural errors." AR 60. First, Mr. Glomski argued that the ADSEP violated Article 31 of the UCMJ and Naval Military Personnel Manual ("MILPERSMAN") 1910-516 by requesting that he provide a sworn statement. *See id.* Next, he argued that the ADSEP failed to provide him with appropriate travel accommodations for his hearing. *See id.* On October 24, 2017, without a response from the Navy, Mr. Glomski received an honorable discharge from the Navy with a narrative of "Misconduct (Serious Offense)" and a re-entry code of RE-4. AR 372.

On June 21, 2018, Mr. Glomski applied to the Naval Discharge Review Board ("NDRB") to change the narrative reason for his discharge and his reentry code. AR 220-21. On December 22, 2020, following a hearing, the NDRB decided to change Mr. Glomski's reason for separation to "Secretarial Authority" and his reentry code to "RE-1." AR 217. Thereafter, on September 9, 2021, Mr. Glomski filed an Application for Correction of Military Records with the Board for Correction of Naval Records ("BCNR"). AR 32-224. On November 22, 2021, the Navy Personnel Command's Office of Legal Counsel issued an advisory opinion recommending that

---

[2] Mr. Glomski was also charged with violating Article 111 of the UCMJ—drunken or reckless operation of a vehicle, aircraft, or vessel. *See* AR 50. However, the ADSEP concluded, by a vote of 3 to 0, that a preponderance of the evidence did not support the charge. *See id.*

the BCNR deny Mr. Glomski's application. AR 14-25. Mr. Glomski filed a rebuttal to the advisory opinion. AR 26-31.

On May 19, 2022, the BCNR, in "substantial concurre[nce]" with the advisory opinion, AR 3, denied Mr. Glomski's application, AR 1. Mr. Glomski filed the instant action on October 23, 2023, arguing that he "was administratively discharged through a substantively and procedurally flawed process." [ECF 1] ¶ 1. The Court issued a scheduling order on December 21, 2023, for filing cross-MJARs. Scheduling Order [ECF 6]. On March 6, 2024, Mr. Glomski filed his MJAR. Pl.'s MJAR [ECF 8]. The government filed its cross-MJAR on April 26, 2024. Gov.'s MJAR [ECF 11]. The motions are fully briefed, *see* Pl.'s Reply [ECF 12]; Gov.'s Reply [ECF 13], and oral argument was held on January 13, 2025.

## II.    STANDARDS OF REVIEW

Parties may move for judgment on the administrative record pursuant to RCFC 52.1, under which the court "is required to make factual findings . . . as if it were conducting a trial on the record." *Acevedo v. United States*, 216 F. App'x 977, 979 (Fed. Cir. 2007). The inquiry before the court is whether the decision-making body, "given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review." *Williams v. United States*, 116 Fed. Cl. 149, 157 (2014); *accord Harmonia Holdings Grp., LLC v. United States*, 20 F.4th 759, 766 (Fed. Cir. 2021) (noting that RCFC 52.1(c)(1) limits the court's inquiry to "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence of record") (quoting *XOtech, LLC v. United States*, 950 F.3d 1376, 1379 (Fed. Cir. 2020)).

This court reviews decisions by military correction boards using the Administrative Procedure Act standards. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). The court must determine whether the board's decision is "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (citation omitted). A decision is arbitrary and capricious when the "decision-maker 'entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Kelly v. United States*, 69 F.4th 887, 894-95 (Fed. Cir. 2023) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "Although many formulations of the arbitrary and capricious standard of review exist, when the standard is applied to military pay cases . . . the court is largely concerned with whether the correction board's decision is procedurally fair and supported by substantial evidence." *Keller v. United States*, 113 Fed. Cl. 779, 786-87 (2013) (citing *Heisig v. United States,* 719 F.2d 1153, 1156 n.12 (Fed. Cir. 1983)), *aff'd*, 565 F. App'x 873 (Fed. Cir. 2014). A decision meets the substantial evidence standard if a reasonable person could consider the evidence sufficient or adequate to support the conclusion. *Reinhard v. United States*, 171 Fed. Cl. 418, 442-43 (2024) (citing *Verbeck v. United States*, 97 Fed. Cl. 443, 451 (2011)). The plaintiff bears the burden of proving, "by cogent and clearly convincing evidence that the Board's decision was arbitrary, capricious or unlawful." *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973); *see also Pearl v. United States*, 111 Fed. Cl. 301, 310-11 (2013) (stating that the plaintiff's burden in seeking review of the

military's action "is a large one" that must be met with "cogent and clearly convincing evidence").

"Generally, 'military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs.'" *Williams*, 116 Fed. Cl. at 158 (quoting *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993)); *see also Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001) ("The presumption of regularity supports official acts of public officers. In the absence of clear evidence to the contrary, the doctrine presumes that public officers have properly discharged their official duties.") (internal quotation marks omitted). In other words, the court does not act as a "super correction board." *Van Cleave v. United States*, 70 Fed. Cl. 674, 678 (2006) (quoting *Skinner v. United States*, 219 Ct. Cl. 322, 327 (1979)). Thus, when a military board "examine[s] all the relevant facts in the record and explain[s] its conclusions . . . the court must uphold [its] decision," even if "reasonable minds could reach differing conclusions on the same evidence." *Stine v. United States*, 92 Fed. Cl. 776, 791 (2010 (internal quotation marks and citations omitted), *aff'd*, 417 F. App'x 979 (Fed. Cir. 2011).

## III. DISCUSSION

Mr. Glomski raises three challenges to the BCNR's decision. First, he argues that the BCNR failed to recognize two procedural errors committed by the ADSEP. *See* [ECF 8] at 10-14.[3] Next, he argues that the ADSEP finding that he committed an assault consummated by a battery is not supported by any evidence and that, therefore, the BCNR decision is arbitrary, capricious, and unsupported by substantial evidence. *See id.* at 14-16. Third, he asserts that the Navy acted contrary to its own instructions by failing to maintain appropriate records relating to his administrative separation, which also demonstrates the lack of substantial evidence for the BCNR's decision. *See id.* at 16-17. As explained below, the Court finds that the BCNR's decision was not arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable law.

### A. The BCNR Did Not Fail to Recognize Procedural Errors

Mr. Glomski argues that the BCNR "ignored [his] right to provide an unsworn statement and not . . . have [the] exercise of his right [be] used against him." [ECF 8] at 10. He states that MILPERSMAN 1910-516 gives him the right to submit an unsworn statement at his administrative separation hearing, to not be cross-examined on such statement unless he chooses to answer questions about it, and to not have his decision to submit an unsworn statement considered against him in any way. *See id.* He also contends that the ADSEP committed a procedural error when its "Senior Member asked whether the Recorder or the board members would get to question Mr. Glomski," *id.*, and that this error was exacerbated when the "Recorder disputed [his attorney's] assertion that Mr. Glomski could answer questions as part of his unsworn statement without being subject to cross-examination," *id.* at 11. Mr. Glomski asserts that "[t]he members' questioning of [his] unsworn statement demonstrates their disregard of [his] right to present an unsworn statement without that fact being considered against him in any way." *Id.* Mr. Glomski further contends that this "entire exchange effectively shifted the burden

---

[3] All page numbers cited from the parties' briefings refer to the page numbers generated by the CM/ECF system.

4

from the Government to prove the bases for separation to Mr. Glomski to disprove them." *Id.* He argues that the ADSEP's decision was tainted by this error, and, therefore, "the BCNR's decision to deny relief on the grounds of this procedural error was contrary to the controlling regulation and unsupported by substantial evidence." *Id.* at 12.

Mr. Glomski has not shown that the ADSEP violated MILPERSMAN 1910-516 or that the BCNR decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Administrative separation proceedings are conducted in accordance with the rules set forth in the MILPERSMAN.[4] MILPERSMAN 1910-516 dictates the following to the respondent—the individual who is the subject of the separation proceeding:

> You may submit an oral or written statement on your own behalf; you may testify on your own behalf; or you may remain silent. If you choose to testify under oath, you may be cross-examined on your testimony. In the alternative, you may make an unsworn statement, personally or through counsel. You may not be cross-examined on such an unsworn statement unless you choose to answer questions about it; however, the recorder may introduce evidence to rebut anything contained in such a statement. If you decide not to testify under oath, or if you decide not to make any statement at all, that fact will not be considered against you in any way.

MILPERSMAN 1910-516 at 4.[5] Here, the record shows that "Mr. Glomski presented an unsworn statement to the members during the administrative separation board." AR 61. It also shows that an ADSEP member inquired whether Mr. Glomski would respond to questions about his unsworn statement, and that counsel for Mr. Glomski and the Recorder had a disagreement on whether Mr. Glomski would be subject to cross-examination if he decided to respond to questions. *See id.* Ultimately, Mr. Glomski chose to not respond to questions, and he was not cross-examined. *See id.* This record does not show a violation of MILPERSMAN 1910-516. That an ADSEP member asked Mr. Glomski if he would respond to questions and that there was an exchange between opposing counsel on the application of MILPERSMAN 1910-516 is not sufficient evidence to conclude that the ADSEP violated Mr. Glomski's rights under the rule.

The BCNR also found no evidence of a procedural error. The BCNR "may deny an application . . . if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice." Sec'y of the Navy Instruction ("SECNAVINST") 5420.193, Encl. 1, § 3(e)(2).[6] Further, the BCNR "relies on a presumption of regularity to support the

---

[4] MILPERSMAN, (Jan. 24, 2024), https://www.mynavyhr.navy.mil/References/MILPERSMAN/. The parties do not dispute any potential differences between versions of the MILPERSMAN or Navy instructions that are alleged by Mr. Glomski to have been violated.

[5] MILPERSMAN, (Jan. 24, 2024), https://www.mynavyhr.navy.mil/Portals/55/Reference/MILPERSMAN/1000/1900Separation/1910-516.pdf?ver=_-wmJAyVH23l4WCpXSTJfw%3d%3d.

official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties." *Id.* In its decision, the BCNR stated the following: "The Board, noting [Mr. Glomski] did not provide evidence [that] the [ADSEP] members held [his] decision to not make a sworn statement or answer questions against [him], concluded there is insufficient evidence the [ADSEP] shifted the burden onto [Mr. Glomski] to prove the case." AR 3. In other words, the BCNR reviewed "the evidence of record,"[7] and found that there was insufficient evidence that the ADSEP negatively construed Mr. Glomski's decision to not make a sworn statement or answer questions. While Mr. Glomski's counsel at the ADSEP hearing and the Recorder apparently disagreed about whether the ADSEP and the Recorder could question Mr. Glomski about his unsworn statement, Mr. Glomski fails to overcome the presumption that the ADSEP members acted lawfully and in good faith in making its findings and recommendations.[8] Consequently, the BCNR's conclusion—that the ADSEP did not apply the wrong burden of proof—was not arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations.

The second procedural error—Mr. Glomski posits—was that "the [ADSEP's] findings worksheet combined two required determinations into one, creating confusion as to exactly what decisions the board members were required to make." [ECF 8] at 10. According to Mr. Glomski, the findings worksheet used by the ADSEP board violated Department of Defense Instruction ("DoDI") 1332.14 and MILPERSMAN 1910-518 by improperly combining two findings—one regarding whether misconduct occurred and one regarding whether separation was warranted because of that misconduct—in one block on the form. *See id.* at 12-13. Mr. Glomski alleges that because the "worksheet provided no space for the members to determine misconduct alone . . . [he] cannot be assured from th[e] worksheet that a majority of the members independently determined that he had committed the misconduct and then independently determined that he should be separated from the U.S. Navy because of that misconduct." *Id.* at 13. Regarding the BCNR, Mr. Glomski contends that it arbitrarily ignored his argument about the worksheet by dismissing his concern as unfounded. *See id.* at 14. Mr. Glomski also contends that, since the BCNR made its decision based solely upon the worksheet, it could not have determined whether the ADSEP members understood that they were required to make two distinct determinations. *See id.*

Mr. Glomski's second allegation of procedural error also fails. Both the DoDI and the MILPERSMAN provide that the board must first determine whether a preponderance of the evidence supports a finding that the respondent has acted in a way which potentially warrants

---

[6] SECNAVINST, (Nov. 19, 1997), https://www.secnav.navy.mil/doni/Directives/05000 General Management Security and Safety Services/05-400 Organization and Functional Support Services/5420.193.pdf.

[7] The Recorder submitted ten exhibits to the ADSEP. AR 66. Mr. Glomski submitted twenty-three exhibits to the ADSEP. *See* AR 120-21.

[8] The BCNR also concluded that Mr. Glomski waived his arguments relating to his unsworn statement because he failed to call the legal advisor during his ADSEP hearing. *See* AR 3. Mr. Glomski challenges this conclusion as arbitrary, capricious, and contrary to law. *See* [ECF 8] at 12. Because the Court finds that Mr. Glomski failed to provide sufficient evidence that the ADSEP negatively construed Mr. Glomski's decision not to make a sworn statement or answer questions and that, therefore, the BCNR's review of the ADSEP's conclusion was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law, the Court need not consider this challenge.

separation and must then independently determine whether separation should occur.[9] Here, Mr. Glomski's ADSEP worksheet was divided into two task areas—findings and recommendations. The ADSEP completed the relevant portion of the "findings" task area of Mr. Glomski's worksheet as follows:

Findings:

| By a vote of | | The preponderance of the evidence | | Basis |
|---|---|---|---|---|
| | | Supports | Does Not Support | |
| 2 | 1 | ✓ | | (1) Separation by Reason of Misconduct – Commission of a Serious Offense, V/UCMJ Art. 128, Assault consummated by battery |

AR 50. Next, the ADSEP completed the relevant portions of the "recommendations" task area of Mr. Glomski's worksheet as follows:

Recommendations (separation or retention):

| By a vote of | | Recommendation for (retention, separation, or suspended separation for ( ) months) |
|---|---|---|
| 2 | 1 | SEPARATION |

Recommendation (only one (1) characterization if recommending separation):

| By a vote of | | Recommendation for (retention, separation, or suspended separation for ( ) months) |
|---|---|---|
| 3 | 0 | HON |

*Id.* As Mr. Glomski correctly notes, the "basis" column of the "findings" task area of his worksheet somewhat confusingly includes both a description of the alleged misconduct (assault consummated by battery) and a recommendation (separation). *See id.*; [ECF 8] at 10. However, the wording reflected in Mr. Glomski's worksheet directly mirrors the title of MILPERSMAN 1910-142, under which he was tried. *See* AR 66-70. Further, two separate charts in the worksheet mandate that the ADSEP conduct separate votes for each determination—whether the evidence supports a finding that Mr. Glomski committed the offense with which he was charged and, if so, whether he should be separated or retained. *See* AR 50. In other words, the ADSEP first found, by a vote of 2 to 1, that a preponderance of the evidence supports a finding that Mr. Glomski

---

[9] Section 5.3(e)(7) of DoDI 1332.14, states that administrative boards "will determine whether each allegation in the notice of proposed separation is supported by a preponderance of the evidence . . . [and] make recommendations on: 1. Retention or separation . . . [and] 2. Suspension of separation . . . [and] 3. Service characterization or separation description . . . [and] 4. Transfer to the Ready Reserve . . . ." *See* DODI 1332.14 (Aug. 1, 2024), https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/133214p.pdf. Similarly, MILPERSMAN 1910-518, provides step by step guidelines for the ADSEP. *See* MILPERSMAN (Nov. 11, 2011), https://www.mynavyhr.navy.mil/Portals/55/Reference/MILPERSMAN/1000/1900Separation/1910-518.pdf?ver=oE350F31XYpIjYkDkhgxEA%3d%3d. First, it states that "[t]he board must determine whether each basis set forth in the notice of proposed separation is supported by a preponderance of evidence." *Id.* Next, it states that "[t]he board next will make a single recommendation to separate or retain the respondent in the Navy." *Id.*

committed an "assault consummated by battery." Next, the ADSEP recommended, again by a vote of 2 to 1, that Mr. Glomski be separated from the Navy. Finally, while not at issue in this case, the ADSEP recommended, by a vote of 3 to 0, that his service be characterized as "honorable."

Upon reviewing the ADSEP's decision and the advisory opinion, the BCNR stated: "the Board concurred with the [advisory opinion] that the evidence does not support [Mr. Glomski's] contention the members were confused by the findings worksheet which clearly has a block specifically labeled 'Recommendations (separation or retention)' which comes after the 'Findings' . . . box[]." AR 3. Thus, although the wording used in the "findings" chart could be viewed as conflating two tasks, the presence of two additional charts devoted solely to "recommendations" supports the BCNR's conclusion that "there [was] insufficient evidence of a procedural error in the findings worksheet." *Id.* Mr. Glomski's unsupported claim that the ADSEP members did not understand their obligation to separately decide whether he committed an offense and then what action should be taken thereafter is therefore insufficient to rebut the presumption of regularity that attaches to board proceedings.[10] *See Philippeaux v. United States*, 2020 WL 7042908, at *8 (Fed. Cl. Dec. 1, 2020) (finding that plaintiff had "not otherwise met his burden to demonstrate 'by cogent and clearly convincing evidence that the [BCNR's] decision was arbitrary, capricious or unlawful'") (citation omitted), *aff'd*, 2021 WL 4059100 (Fed. Cir. Sept. 7, 2021). In sum, because the BCNR reviewed the record evidence and provided a rational explanation for upholding the ADSEP's findings and recommendations, its decision was not arbitrary, capricious, and unsupported by evidence. *See Stine*, 92 Fed. Cl. at 791 (noting that the court must uphold BCNR decisions when they are based on the record evidence and explained); *Pope v. United States*, 16 Cl. Ct. 637, 641 (1989) ("When substantial evidence supports a board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result.").

### B. The Finding that Mr. Glomski Committed an Assault Consummated by a Battery is Supported by Substantial Evidence

Mr. Glomski argues that the ADSEP's conclusion that he committed assault consummated by a battery against his wife was arbitrary and capricious and not supported by substantial evidence. *See* [ECF 8] at 14 ("No evidence of a battery [against his wife] exists in this administrative record."). According to Mr. Glomski, "[a]lthough Mrs. Glomski originally told the police officers that [he] had pointed a gun at her head, she later testified that she had no memory of the incident, that her brother had written the statement included in the police report, and that she was intoxicated to the point of blackout after using alcohol and medication that evening." *Id.* Mr. Glomski contends that his "statements were consistent throughout," *id.*, and that the record includes statements from Mrs. Glomski's family members attesting to her alcoholism as well as statements from "[s]everal senior enlisted Sailors . . . [attesting to his]

---

[10] Mr. Glomski also asserts that the lack of a transcript or summary of the ADSEP hearing makes it impossible to determine if the ADSEP members understood how they were to complete the findings sheet: "Without evidence that the board members understood the decisions they were to make, the BCNR's decision is without evidentiary support." [ECF 8] at 14. However, Mr. Glomski fails to cite to any statute or regulation that requires the inclusion of a transcript or summary in the record before the BCNR. Further, SECNAVINST 5420.193 states that it is "the applicant's responsibility to procure such evidence not contained in the official records of the Department of the Navy as he/she desires to present in support of his/her case." SECNAVINST 5420.193, Encl. 1, § 4(e)(1).

peaceful nature," *id.* at 15. Regarding the BCNR, Mr. Glomski argues that although he raised the issue, the advisory opinion not only failed to discuss the elements of the offense charged (assault consummated by a battery), but instead analyzed the elements of a different offense (aggravated assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm). *See id.*

Despite Mr. Glomski's assertions to the contrary, the Court finds that the BCNR's decision was not arbitrary or capricious and was supported by substantial evidence. The basis of Mr. Glomski's separation was "assault consummated by a battery" in violation of Article 128 of the UCMJ. *See* AR 50. An "assault consummated by a battery" has two elements: "(a) That the accused did bodily harm to a certain person; and (b) That the bodily harm was done with unlawful force or violence." Manual for Courts-Martial, United States (2016 ed.) ("MCM"), pt. IV, ¶ 54b(2).[11] Here, it appears that the author of the advisory opinion erroneously considered whether Mr. Glomski committed an "aggravated assault," rather than the offense charged.[12] Despite this fact, the Court nevertheless upholds the BCNR's finding.

Paragraph 2(a) of MILPERSMAN 1910-142 provides that service "[m]embers may be separated based on commission of a serious military or civilian offense when the offense would warrant a punitive discharge . . . *for a same or closely related offense*." AR 67 (emphasis added). Further, paragraph 2(b) of MILPERSMAN 1910-142 provides that the "[c]ommission of a serious offense does not require adjudication by non-judicial or judicial proceedings; however, [the] offense must be substantiated by a preponderance of evidence (e.g., copy of police record, Naval Criminal Investigative Service investigation, etc.)." *Id.* In other words, service members may be separated following the commission of a serious offense that would warrant a punitive discharge for a similar offense, as long as the offense is substantiated by a preponderance of the evidence.

---

[11] The UCMJ defines an "assault" as "an attempt or offer with unlawful force or violence to do bodily harm to another, whether or not the attempt or offer is consummated." MCM, pt. IV, ¶ 54c(1)(a). Further, an assault "must be done without legal justification or excuse and without the lawful consent of the person affected." *Id.* "Bodily harm" is "any offensive touching of another, however slight." *Id.* The UCMJ defines a "battery" as "an assault in which the attempt or offer to do bodily harm is consummated by the infliction of that harm." *Id.* ¶ 54c(2)(a).

[12] The author of the advisory opinion identifies the elements of the charge against Mr. Glomski as follows: "(1) the accused offered to do bodily harm; (2) accused did so with a certain weapon; (3) the offer was done with unlawful force, and; (4) the weapon was used in a manner likely to cause death or grievous bodily harm." AR 18. These elements closely resemble those listed in the MCM under "assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm," a type of "aggravated assault." MCM, pt. IV, ¶ 54b(4)(a). The elements of such an offense are as follows:

> (i) That the accused attempted to do, offered to do, or did bodily harm to a certain person; (ii) That the accused did so with a certain weapon, means, or force; (iii) That the attempt, offer, or bodily harm was done with unlawful force or violence; and (iv) That the weapon, means, or force was used in a manner likely to produce death or grievous bodily harm. (Note: Add any of the following as applicable) (v) That the weapon was a loaded firearm. (vi) That the person was a child under the age of 16 years.

*Id.*

9

In this case, both "assault consummated by a battery" and "assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm" are listed in the MCM under Paragraph 54, which is captioned "Article 128—Assault," and includes (i) simple assault, (ii) assault consummated by a battery, (iii) assault permitting increased punishment based on status of victim, and (iv) aggravated assault. *See* MCM, pt. IV, ¶ 54. Also, both crimes are serious offenses that, if committed by a service member, would warrant a punitive discharge. *Compare id.* ¶ 54e(2) ("Assault consummated by a battery. Bad conduct discharge, forfeiture of all pay and allowances, and confinement for 6 months.") *with id.* ¶ 54e(8) ("Aggravated assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm. (a) When committed with a loaded firearm. Dishonorable discharge, forfeiture of all pay and allowances, and confinement for 8 years."). These two types of assault are therefore closely related offenses. *See, e.g.*, *Osburn v. United States*, 171 Fed. Cl. 38, 47-48 (2024) (holding that the offense of "False Official Statement; False Swearing" under 10 U.S.C. § 907 was closely related to the offense of "Sexual Assault" under § 920 because each "had a maximum penalty of a punitive discharge").

Further, a preponderance of the evidence before the ADSEP demonstrates that Mr. Glomski committed, at a minimum, an assault consummated by a battery by doing bodily harm to his wife with a dangerous weapon in the early hours of May 27, 2017. For example, the police report states the following:

> Writer then listed as Michael stated the following: Michael was told by Heather tonight, that she had cheated on him. Michael stated he was devastated, and went into the bedroom. He sat alone for a bit, and Heather came in to the room wanting to talk. He pushed her out of the room, and closed the door again. She came back into the room and he wanted her to leave so he grabbed his handgun and chambered a round. He held the gun with one hand, point to his front and downward, and pushed Heather out the door again. When asked why he grabbed the gun and what his intent was, Michael claimed "I wanted to scare her".

AR 72. Additionally, the police report contained the following description of the incident:

> Heather stated she attempted to get a bottle of vodka away from Michael because he had to [sic] much to drink that night. Michael refused to give up the bottle. Heather walked into their bedroom and Michael followed. (Heather became visibly shaken when she recounted this part of the story and began crying.) Heather stated Michael grabbed his .45 handgun out of the nightstand and pointed it at the left side of her head with his right hand. Heather stated he forced her on the bed and stated several times he would kill her. Heather stated, "go ahead, shoot me."

AR 76. Also, Mrs. Glomski made the following statement to the police: "I walked into the bedroom, he followed. he went in the nightstand, grabbed the gun. Put it to my head, forced me

on the bed. I said, 'Go ahead, shoot me.'" AR 71. Lastly, the Navy's FAP Incident Determination Committee, which concluded that the incident satisfied the "criteria for spouse physical abuse," did so based on its consideration of Mr. Glomski's verbal account of the incident, Mrs. Glomski's verbal account of the incident, and the police report. AR 108. Thus, the ADSEP's finding that Mr. Glomski committed an "assault consummated by a battery," and the BCNR's decision to uphold that finding, are supported by substantial evidence.

Furthermore, Mr. Glomski's differing view of the evidence does not render such decisions arbitrary, capricious, or not supported by substantial evidence. While the record contains evidence suggesting that Mr. Glomski was not a violent individual and that Mrs. Glomski "was an alcoholic" who later stated that she had "very little memory" of the incident, AR 6, this does not invalidate the conclusions drawn by the author of the advisory opinion and adopted by the BCNR. *See Stine*, 92 Fed. Cl. at 791 (stating that "[t]he BCNR must examine all the relevant facts in the record and explain its conclusions" and that the Court must uphold the BCNR's decision when it meets this obligation, even if "reasonable minds could reach differing conclusions on the same evidence") (citations omitted).

Here, the advisory opinion contains a detailed and thorough review of the evidence, *see* AR 18-19, and supports the BCNR's conclusion that Mr. Glomski committed an aggravated assault—a charge related to the offense of assault consummated by a battery. First, the advisory opinion notes that Mr. Glomski's "statement to police and to the preliminary inquiry officer met the elements of the offense, regardless of his wife's testimony." AR 18. In support of this conclusion, it notes that "[b]y [Mr. Glomski's] own statement, he chambered a bullet and held it in his wife's direction . . . [he] never claimed he had a legal justification for pointing his firearm in the direction of his wife, such as self-defense, . . . [and] by pointing a loaded firearm in front of him as he proceeded to push his wife out the door, was in a manner that was likely to cause death or grievous bodily injury, . . . ." AR 18. Next, the advisory opinion states that although Mr. Glomski "says he did not intend to hurt his wife, [] the 2016 MCM only required that he unlawfully demonstrate violence and that it create in the mind of another 'reasonable apprehension of receiving immediate bodily harm. Specific intent to inflict bodily harm is not required.'" AR 18. In support of this conclusion, it notes that "[r]egardless of [Mr. Glomski's] subjective specific intent, the action of chambering a round in the weapon and having it pointed in the general direction of another is sufficient to meet this standard." AR 18. Next, the advisory opinion explains why Mr. Glomski's claim that he only threatened to harm himself was unpersuasive:

> First, as show[n] in the background section, [Mr. Glomski's] statement to the [preliminary inquiry officer] contradicts his original statement to the police substantially. Second, [Mr. Glomski's] statement of events still describes an offer to do violence that would have caused reasonable apprehension. . . . When [Mr. Glomski] entered the room, [Mrs. Glomski] asked, "Are you going to shoot me?" This question shows that [Mrs. Glomski] was in a state of apprehension due to [Mr. Glomski's] having a weapon with a chambered round, pointed in her general direction.

11

AR 18-19; *see also* AR 14 (defining "PIO" as "preliminary inquiry officer"). The advisory opinion also notes the irrelevance of character evidence: "Whatever the witnesses['] general observations were of [Mr. Glomski's] character for peacefulness, his own statements and actions show him acting in a violent manner." AR 19.

Next, the BCNR stated the following regarding its consideration of the evidence and the advisory opinion:

> Lastly, the Board substantially concurred with the [advisory opinion] and concluded the basis for separation was supported by a preponderance of the evidence. The Board considered each of [Mr. Glomski's] contentions, the credibility of the witnesses, and the evidence of [his] character for peacefulness but noted [his] repeated acknowledgement that [he] retrieved [his] handgun and chambered a round of ammunition. The Board further noted [Mr. Glomski] ha[s] never claimed [he] had legal justification. The Board, concurring with the [advisory opinion] that all elements of Article 128 were met, concluded the preponderance of the evidence supported the basis for the Article 128 violation.

AR 3-4. The BCNR therefore rationally concluded that "there was insufficient evidence of an error or injustice to warrant granting [Mr. Glomski's] requested relief." AR 4; *see also Boyer v. United States*, 81 Fed. Cl. 188, 194 (2008) ("The court accords a presumption of regularity and deference to a correction board's denial of relief."), *aff'd*, 323 F. App'x 917 (Fed. Cir. 2009); *Stine*, 92 Fed. Cl. at 791 (noting that the court must uphold a military board's decision when the board examines the relevant evidence and explains its conclusions).

### C. The Navy's Failure to Maintain Records Relating to Mr. Glomski's Administrative Separation is Harmless Error

Mr. Glomski claims that the Navy's "documentation of proper processing in Plaintiff's official records was arbitrary and capricious." [ECF 8] at 16. According to Mr. Glomski, the following three documents should have been included in his official military personnel file ("OMPF") and therefore also the administrative record: (i) the "notification of administrative separation;" (ii) "[a]ny rebuttal to the Letter of Deficiency from the Recorder"; and (iii) the "decision of the Separation Authority." *Id.* at 17. Mr. Glomski also states that the "only documents relating to the administrative separation of Mr. Glomski found in this record are the ones that Mr. Glomski himself provided to the NDRB and BCNR." *Id.*

The Court finds that the government's admitted failure to maintain a complete personnel file for Mr. Glomski amounts to harmless error. *See* AR 2 (where the BCNR concedes that Mr. Glomski's "OMPF is incomplete in that it does not contain all the documents pertaining to [his] administrative separation processing, . . . ."). However, as explained by the United States Court of Appeals for the Federal Circuit:

12

> "To recover back pay, it is not enough for the plaintiff to show merely that an error or injustice was committed in the administrative process, he must go further and either make a showing that the defect substantially affected the decision to separate him or relieve him from active duty, or at least he must set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action."

*Christian v. United States*, 337 F.3d 1338, 1343 (Fed. Cir. 2003) (quoting *Hary v. United States*, 618 F.2d 704, 707 (Cl. Ct. 1980), *superseded by statute on other grounds*, 10 U.S.C. § 628), *decision modified and remanded*, 60 Fed. Cl. 550 (2004); *see also Antonellis v. United States*, 723 F.3d 1328, 1333 n. 1 (maintaining that "harmless error remains an appropriate inquiry"); *accord Christensen v. United States*, 60 Fed. Cl. 19, 23-24 (2004). "Strict compliance with procedural requirements, however, 'is not required where the error is deemed harmless.'" *Strickland v. United States*, 69 Fed. Cl. 684, 710 (2006) (quoting *Wagner v. United States*, 365 F.3d 1358, 1361 (Fed. Cir. 2004)).

While the Navy is required to place "all relevant adverse material" in the service member's OMPF, Bureau of Navy Pers. Instructions ("BUPERSINST") 1070.27E, Encl. 1 at 1,[13] "[s]ervice members that discover omissions in their OMPF should contact their personnel office for assistance," BUPERSINST 1070.27E at 2. In this case, Mr. Glomski apparently realized that his personnel file was incomplete and took appropriate action by submitting additional documents to the NDRB and BCNR. *See* AR 2-3; [ECF 8] at 17. There is no evidence that Mr. Glomski was in any way prejudiced by the apparent lack of the three identified documents in his OMPF. The first missing document identified by Mr. Glomski appears to be the June 23, 2017, notification of the ADSEP hearing. *See* [ECF 8] at 17. However, this document was provided to the ADSEP by the Recorder. *See* AR 66 ("EXHIBIT 2: Respondent's Notice dtd 23 Jun 17"). Additionally, by virtue of Mr. Glomski's presence at the ADSEP hearing on September 6, 2017, *see* AR 2, it appears that he received either a copy of the document or some other form of notice; therefore, it is unclear how he was prejudiced by the lack of the document's presence in his personnel file. The second document identified by Mr. Glomski is a rebuttal from the Recorder in response to his letter of deficiency. [ECF 8] at 17. This document was—according to the government—never created, *see* [ECF 11] at 25 n.9 ("There is no evidence that the Government provided a written rebuttal, which is not required by the governing law."), and therefore could not have been missing from his personnel file. The third document appears to be the ADSEP's September 6, 2017, decision. *See* [ECF 8] at 17. By virtue of the arguments made in Mr. Glomski's appeals to the NDRB and the BCNR, as well as in his instant case before this Court, it appears that at some point he received a copy the decision. *See* AR 26-31; 220-21. Additionally, while he raises multiple issues with respect to the ADSEP's decision, he cannot dispute the fact that he obtained favorable relief from the NDRB and that both the author of the advisory opinion and the members of the BCNR addressed his concerns with the ADSEP's decision in their

---

[13] BUPERSINST (Oct. 13, 2023), https://www.mynavyhr.navy.mil/Portals/55/Reference/Instructions/BUPERS/BUPERSINST%201070.27.pdf?ver=xsnol9vck7fBWNm6GtGxSQ%3d%3d. As noted in the instruction, it is reviewed annually for "applicability, currency, and consistency with Federal, DoD, Secretary of the Navy, and Navy policy and statutory authority." *Id.* Potential differences between versions is not at issue in this case.

respective letter and decision. *See* AR 1-4, 14-25, 47-48; *Milas v. United States*, 42 Fed. Cl. 704, 713 (1999) ("Mere technical procedural error is insufficient to warrant reversing the agency's administrative decision. The error must be a violation of mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced.") (internal quotation marks and citation omitted), *aff'd*, 217 F.3d 854 (Fed. Cir. 1999).

## IV.    CONCLUSION

In sum, because Mr. Glomski has not shown that the BCNR decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law, the Court **GRANTS** the government's MJAR [ECF 11] and **DENIES** Mr. Glomski's MJAR [ECF 8]. The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz  
THOMPSON M. DIETZ, Judge